Good morning again. This is an interlocutory appeal from the denial of summary judgment on the issue of excessive force. And the primary issue in this case is I believe the district court misapplied the Robinson v. County of Solano case with regard to the issue of pointing weapons. Well, why don't you, this is very factually, it seems to me that this, this is speaking for myself, that this case really depends a lot on the facts. Would you just take us through what happened here? Okay. In the light that we have to view? Yes. The officers knocked on the door to serve a search warrant at around 7 in the morning. The officers had their weapons drawn. They came in with weapons drawn. What were they searching for? Cultivated marijuana. They immediately find the wife, Penny Miller, in the house, turn her around, handcuff her, place her in a seat. They, the daughter is sitting in the living room, I mean, sorry, sitting in the dining room near the mother, asked to get moved next to the mother. They accommodate that. The mother says that the officers had guns drawn, pointing in the direction of both of them at that time. The other officers, another, other officers have gone down to the bedroom and found Chris Miller sleeping. Chris Miller alleges that Officer Hutchinson put a gun to his head or to his forehead with a barrel with a gun cocked. Is that the son or? No, that is the father. The father, okay. There's a father, mother and daughter to wake him up and then gets him out of bed, tells him to put his pants on and then leads him roughly by the arm and he believes the gun is pointed to his back, but he's not watching, to an interview room where he's forcefully seated by Officer Hutchinson. A few moments later, he's got, I can't remember which, one of the Millers has gotten up to go put the dogs into the garage. They have two dogs, both weighing I think over 40 pounds. Once the dogs are put in the garage, all the dogs are put in the garage. Chris Miller goes on to allege that Tracy Grant conducts three interviews with him. He says he's properly Mirandized and they're not claiming a Miranda violation, but that he screamed at him for the course of the three interviews, denied him breakfast and didn't let him use the restroom until about 11 o'clock. Is one of these three identified as a suspect or? Yes, Chris Miller is the suspect and he is, he and his wife are arrested for cultivating marijuana at the scene and he's detained. Was he a suspect before the officers arrived or was he a suspect based on what they perceive in the search? I think he was a suspect before they arrived and clearly when they found the grow and the initial interview. The warrant was a search warrant, right? Not an arrest warrant. Yes, that's true. But I believe that the officers had seen Chris Miller at the hydroponics store, which is why that caused them to focus on Mr. Miller. They did not know. So part of what you're saying is at least part of the probable cause showing to support the issuance of the search warrant implicated Chris Miller. No, actually not really because the warrant was silent as to that. The warrant began with the garbage search, so the warrant was silent as to that. Is this the same, by the way, is this the same, I forgot the acronym, the same unit that involves in all three cases? Yes, the marijuana eradication team. But the only allegations as to the point, clearly we're not disputed. The judge, district court judge, ruled that Officer Hutchison put in a gun to Mr. Miller's head. If that's true, you should go to a jury. And we didn't. We're not appealing that. The part where we're appealing has to do with the mere pointing of guns at the mother and the daughter and Mr. Miller. All right. Now, now getting to that issue seems to me this case is just fundamentally different from Robinson, because here and unlike any other case I know of, the person at whom the guns were pointed were handcuffed and in restraints. Not true in any other case that I know of. Well, Your Honor, if you follow the rationale of, and again, it's a qualified immunity argument. But isn't that true, though, about the facts of this case? That's true. Oh, no. Well, they couldn't present any danger to the officer. The daughter was a young girl who was not handcuffed, but the mother was handcuffed. Your Honor, my argument with regard to Robinson focuses in large part on the concurrence, which said that basically pointing guns, in their view, the view of three of your colleagues, felt that pointing the gun could never be excessive force under the Fourth Amendment. And to me, that indicates, as of the date of that decision, at least before that decision was rendered, an on-bank decision, the law in the Ninth Circuit was unclear whether it could be or not. Okay. It's established that this was pre-Solano. Is that right? Yes. This activity occurred. This was 1999, and Robinson v. Solano was decided in 2002. Okay. So at that point, the law was not clearly established, at least in this circuit, that pointing guns was a problem. Well, here's my problem. The law of excessive force was in existence, was it not? Absolutely. Isn't that really what this is? Right. Yes, Your Honor. And the Robinson v. County of Solano case dealt with a specific issue of whether pointing a weapon constituted excessive force. And in 2002, three Ninth Circuit judges in a concurrence Now, they weren't the majority opinion, but in a concurrence Well, I know who wrote the majority opinion, but That person wasn't handcuffed, wasn't apparently dangerous, wasn't being there was no warrant suspecting him of any criminal activity. In Robinson? Yeah. Actually, I was going to make that point, that that was his argument, that there was no reason to be pointing guns at him, which is the same argument that they're making in this case, that there was no reason to be that the guns were pointed unnecessarily. So that constitutes excessive force. And whether or not under these facts, I think that after Robinson, under these facts, if you believe the plaintiffs that could constitute excessive force, my argument is before that the law was not clear that mere pointing a gun could and they're entitled to the qualified immunity of good faith because of that. I think your point is, but the law of excessive force generally is quite clear. And, you know, to me, it's a stretch to rely on Robinson because of the fact these the facts of this case are clearly distinguishable. Namely, again, I repeat, these subjects were in handcuffs, which is not true in Robinson. Robinson was not in handcuffs, but it was the same argument that he was not a threat and that he was not acting violent. And they could see they could see that he had reports of irrational behavior and so forth. He had shot a dog in a manner. So, you know, there are things they didn't know about. They didn't know what this person was going to do. You know, and but even then it's possible now, you know, for that for the for the pointing of a gun to be excessive force. But my point is, even before Robinson, if you have a person sitting in a chair in handcuffs, seems to me it's pretty clear to point a gun at that person is, you know, is excessive force. Well, you're also I think understand the facts of this case. They basically the officers had the guns out until the dogs were put away. They said the mother and the daughter was sitting over there and someone as an officer had a gun wasn't trained at their head like this. A gun was out. When you're in a house, an officer in a house, if you move somewhere, a gun could be pointed at someone. Now, this is allowed the state of the fourth violation. I think you're getting into a factual dispute now. But how long did the search take? Well, the entire search, I think it went from about seven o'clock till about 11, 11 or 11, 15. But the guns were put away within the first, I believe it's dinner 15 minutes after they secured the dogs. So the guns were not out the entire day. I mean, 15 minutes before, you know, everybody's in handcuffs and 15 minutes before you put a gun away. I mean, I don't think that favors your case. All I'm saying is, you know, there's a factual dispute. If there is, I mean, you can't win this motion on summary judgment. It seems to me if three Ninth Circuit judges don't believe that the law was clear, how can you say a reasonable officer should have believed the law was clear? Because their argument wasn't that pointing guns. Well, you're just focusing on this little narrow aspect of. Well, but that gets as to three of the officers in the case. That's the only reason they're in the case is because they let they had guns out. The other I guess. And that's the test. The question is, was the law clearly established that pointing guns under these circumstances was a violation? And I think under Fuller versus Vines and Robinson versus Solano County answers clearly no. Well, it's only after that. Fuller has nothing to do with excessive force. Well, the judge, the court felt necessary, distinguished Fuller and say that it didn't mean what some people interpreted it to mean. So again, we are a step. What I said about Ford is what's apparent on the face of the case is that it has nothing to do with excessive force. Believe I'm out of town. Thank you. Thank you. Your Honor, false early for Chris Penny and Corrine Miller. There are a lot of factual disputes about what happened that morning. Well, what's the range of dispute with respect to how long the guns were out? The guns were out between 15 and 20 minutes after they were handcuffed. We're pointed at both Penny Miller and Corrine Miller, a 10 year old girl. And we're pointed at Chris Miller after Chris Miller was woken up. The mother and child were awake when the police arrived, were put down on a couch. The mother was handcuffed and placed there. The dogs were already outside. That's one of our factual contentions. And they were put further away. They were not running around and they were not large animals that would justify the police having their guns out. All right. He says 10 to 15. You say 15 to 20. Yeah. And this is from the time the officers got there, the time they arrived. Right. OK. And once they arrived, Penny Miller opened the door. So the dispute is with respect to whether it's a five minute dispute in terms of how long the guns were. OK. And I don't know what's what's your argument on the law being clearly established. What is it that you rely on to for the proposition that the law was clearly established that holding the guns for, let's say, even 20 minutes was a violation of the Constitution? I think as I cited in my brief, the law that regards excessive force would state that they shouldn't be using potentially deadly force, which is terribly frightening to people that are handcuffed. We're not focusing on the moment before they were handcuffed when they had the guns drawn out or when they entered the residence where they didn't know what the I'm looking at it because of the posture of this case in terms of whether it was clearly established at that time that that constituted excessive force. And I'm wondering what case are you relying on? Obviously, this is pre Solano. So we can't talk about Solano. Right. Well, I asked to ask to Corrine Miller. I think I set forth an argument in my brief that if you don't have clear circuit law, police officers may be on notice to look to other circuits to see what's clearly established. And there was a Seventh Circuit case that existed at the time that said that it was excessive force to point guns at a tenure. I think it was a ten-year-old boy. I may be misstating that, but it was very similar in age. Somebody that posed no threat and was what was the name of that Seventh Circuit case? McDonald. Okay. And I think it's cited in my brief. And as to Corrine Miller, I would suggest that that their position is that Robinson must have overruled McDonald. If McDonald applied, as I suggest, it applies because there was no circuit law at this time on that. There was no circuit law. Let me ask you this. Speaking of there's no circuit law, what's the law on, you know, whether something's clearly established if there's no circuit law? As I set forth in my brief that you look to decisional on other circuits, maybe you'll look to... Do you agree? Do you agree with your adversary that the only force that this is like the Robinson case and that the only force that we're concerned with here is the pointing of a gun? No. I'm focusing on that right now. The other forces that were used are not only the weight of Mr. Miller up, carrying him down. There's the four-hour interview where Grant, Officer Grant, who was in charge of the MET, was screaming at my client. They say it was three different interviews, but it was really a four-hour barrage of time where my client was saying, everything I'm doing is legal under state law. I have a doctor's recommendation. I've got all of this stuff. I only have a few plants. What's the problem here? And he was being yelled at and berated when he tried to get up to relieve a leg cramp at one point because he has serious medical conditions. He was called after. He was subdued, woken up, handcuffed, brought down to be interviewed. Never offered any resistance. Well, let me ask you this. Is the only claim on behalf of Corrine... No, I forget which is the daughter and which is the... Corrine. Do you represent both of them? They're both plaintiffs? Yes. Is the only force that you argue is excessive that was used against them the pointing of the gun? Yeah, as to Corrine and Penny Miller, the pointing of the guns was the only force that we used directly against them. And Corrine Miller, that's, yeah, as to them, Corrine and Penny Miller, it was after Penny Miller was handcuffed. Corrine Miller was never handcuffed, and so, but she was a ten-year-old. It was clearly apparent to the officers her age. And as to Chris, there was multiple acts by several different officers, Hutchinson mostly, who wakes him up and then handcuffs him, drags him down the hallway, and then Grant and Hutchinson again who puts him in the chair on two different occasions. And Mr. Miller, Chris Miller, had bruises on his arms because of the encounter that he acquired after he was handcuffed. And that seems to me to be significant, particularly with Robinson. They were responding to a call that shots had been fired, and so when they came upon the scene, they didn't know what they were going to encounter. At some point, very near after they entered this residence, they knew exactly what they were encountering, which was a suburban house in suburbs of Sacramento with a man and a woman and their ten-year-old child and a guy who was claiming that he was growing somewhere in the neighborhood of ten or twelve cannabis plants legally because he had a doctor's recommendation. That's it. Thank you very much.
judges: Schroeder, O'scannlain, Tashima